BRIDGET E. THURMAN *v*. WIRT ADAMS, STATE REVENUE AGENT.

INTOXICATING LIQUORS. *Code* 1892, § 1590. *Penalty for selling. Husband and wife. Place of business.*

A wife is not liable to the penalty prescribed by code 1892, § 1590, providing that any person who shall sell or give away intoxicants unlawfully, or allow the same to be sold or given away at his place of business, for any purpose whatever, shall be subject to pay the state, county and municipality each the sum of $500, because her husband, without her knowledge, contrary to her express orders and his promise to refrain from so 'doing, sells intoxicating liquors in her grocery store, although he be the general manager of her business.

FROM the circuit court of Lee county.

HON. EUGENE O. SYKES, Judge.

Adams, state revenue agent, appellee, was plaintiff in the court below; Mrs. Thurman, appellant, was defendant there. From a judgment in plaintiff's favor defendant appealed to the supreme court. The facts are fully stated in the opinion.

*Anderson & Long,* for appellant.

Section 1590 of the code of 1892 is highly penal. Penal statutes must be strictly construed. Such statutes cannot be so construed as to embrace cases not plainly within their letter. *Johnson* v. *State,* 63 Miss., 228; *Foote* v. *Vanzant,* 34 Miss., 40; *White* v. *Comstock,* 6 Vt., 405.

A principal is only liable for the act of his agent done within the scope of his authority. There is no use of citing authorities to support this proposition. It is too well settled. Even the civil liability of the principal does not extend beyond the scope of his agent's authority. Certainly the principal is not liable criminally for the acts of his agent done without the scope of his authority.

Mrs. Thurman put her means into a grocery business, and put her husband in charge of it with full authority to manage and control the grocery business as he saw fit, for her and in her name. His authority was expressly limited to the extent that he should not sell whisky. The cases of *Fullwood* v. *State,* 67 Miss., 554, and *Fahey* v. *State,* 62 Miss., 402, relied on in the court below by the state, have no application to this case. In *Fullwood* v. *State* the court decided that where liquors are sold at the bar of a boat by one apparently in charge of the bar as clerk or agent, in the absence of testimony to the contrary, the sale is to be taken as made by the owner of the bar; and in *Fahey* v. *State* it is decided that a licensed owner of a dramshop is guilty of an unlawful sale to a minor made by his clerk, even without the owner's consent or knowledge.

The difference in these cases and the one at bar is that in those cases the owner was engaged in selling liquor, while in this case the owner of the business, Mrs. Thurman, was engaged in selling groceries and not whisky. In those cases selling liquor was within the scope of the authority of the agent and therefore the principal under the law was held guilty of the unlawful sale. The scope of the authority of the defendant's husband in this case was selling and managing her grocery business, with an express agreement and limitation that he should not sell whisky.

*Allen & Robins,* for appellee.

It is not necessary to cite authorities to the effect that a principal is ordinarily bound by the acts of his general agent done

within the apparent scope of his authority, although contrary to special instruction. 1 Am. & Eng. Enc. Law (2d ed.), 992; 1 Am. & Eng. Enc. Law, 1336, *et seq.*

Not only is the principal liable for the contracts of his agent, made within the scope of his authority, but for the torts of the agent done within the apparent scope of his authority, although contrary to the principals' instructions and against his wishes and without his consent or knowledge. 1 Am. & Eng. Enc. Law, 1151 and notes.

He is not only liable for ordinary damages arising out of the torts of the agent done in the scope of his authority, but he is liable for penalties inflicted by statute for such acts of the agent, although the act was done contrary to the instruction of the principal. 1 Am. & Eng. Enc. Law, 1152 and notes; *Buffalo R. R. Co.* v. *N. Y. R. R. Co.,* 23 N. Y. Sup., 303, 309. The principal is liable for the penalty of usury where his agent makes a contract for the benefit of the principal within the scope of his authority, although the principal has given instruction to his agent not to exact usury. *Rogers* v. *Buckingham,* 33 Conn., 81; *Payne* v. *Newcomb,* 39 Am. Rep., 69; *Cheney* v. *White,* 25 Am. Rep., 487. See also *Fullwood* v. *State,* 67 Miss., 554; *O'Flinn* v. *State,* 66 Miss., 7.

PRICE, J., delivered the opinion of the court.

This case presents a single question of law upon the following statement of facts: J. E. Thurman was engaged in the mercantile business in the town of Tupelo, and, while so engaged, he was indicted for the unawful sale of whisky, and tried at the August term of 1901, convicted and heavily fined, and went out of business. His stock of goods was sold for the benefit of creditors, and the appellant—his wife—purchased the same with her own money. She placed her husband, J. E. Thurman, in charge of the business as her general agent. He bought the goods, employed the clerks, signed checks, made remittances, and had general charge of the business. Appellant's

agent bought whisky, had it shipped in his principal's name to Tupelo, placed it in the store, and sold it from his principal's place of business.   About the 1st of November, 1901, there was a show in the town of Tupelo, and J. E. Thurman made on that day two or three or more sales of whisky, and thereafter the store was raided by the officers of the law, and they found about fifty gallons of whisky hid in different parts of the building, in pint, half pint, and quart bottles.   On the 9th of November following, the revenue agent sued out an attachment, and it was levied upon Mrs. Thurman's stock of goods to recover the penalty pronounced by section 1590 of the code of 1892 against persons selling or allowing whisky sold at their place of business.   The stock of goods so levied on was valued at $800.   Mrs. Thurman, the appellant, lived about one mile from the store, and outside of the city of Tupelo, did her own housework, cared for her three small children, and rarely ever went to the store.   Mrs. Thurman did not know that her husband was selling whisky or allowing it to be sold in her place of business; in fact, it is uncontradicted in the evidence that she had, before placing her husband in charge of the store, expressly forbidden him to sell whisky, and exacted of him a promise that he would not sell before she would invest her money in the business.   J. E. Thurman fled the country, and did not appear to testify in this case.   At the conclusion of the testimony the trial judge charged the jury peremptorily to find for the plaintiff.

Admitting that appellant did not know that whisky was being sold in her place of business, and that it was sold without her knowledge or consent, and against her positive instructions, then was this charge correct?   Section 1590 of the code reads: "Any person who may sell or give away liquors unlawfully, or allow the same to be sold or given away at his place of business, for any purpose whatever, shall be subject to pay the state, county, and the city, town, or village each the sum of $500, and it shall be the duty of the sheriff or state revenue agent, or either·

to assess and collect such sums whenever he is informed such sale or gift has been made." This is a highly penal statute, and the rule of law is that it should be strictly construed.

It is insisted by appellee that the principal is bound by the acts of his general agent, done within the apparent scope of his authority, and that the principal is liable for the penalty inflicted by the statute for the acts of his agent, though done without his knowledge and contrary to his instructions. It is also contended that the principal is criminally liable for the acts of his agent in cases arising under police regulations and revenue laws, and they cite *Fullwood* v. *State,* 67 Miss., 554; 7 South., 432, and *Fahey* v. *State,* 62 Miss., 402. The general rule is that the principal is not criminally liable for the acts of his agent, done contrary to his *bona fide* instructions. In many jurisdictions, however, there are statutory provisions modifying and even abrogating this rule. But in all that line of cases (*Whitton & Ford* v. *State,* 37 Miss., 379; *Riley* v. *State,* 43 Miss., 397; *Fahey* v. *State,* 62 Miss., 402, and *Fullwood* v. *State,* 67 Miss., 554; 7 South., 432) it will be found the agent was acting within the apparent scope of his authority. The difference in the cases cited and the one at bar is that, in the ones cited, the principal was in the whisky business, and the acts of his agent in violation of law (such as a sale to a minor or an intoxicated person); but a sale by appellant's agent of whisky without her knowledge and against her expressed command was not within the apparent scope of his authority. She was in the grocery business. In that line of business where druggists have been convicted for sales made by their clerks without the knowledge of the principal, and where the sale was for other than medical, culinary, or sacramental purposes, convictions were sustained upon the ground that the druggist had legal authority to sell, but that an unlawful sale by his agent was within the apparent scope of his authority.

Certainly appellant did not sell any whisky. Did she allow it to be sold at her place of business? We find this term

"allow" defined in volume 2, p. 152, Am. & Eng. Enc. of Law (2d ed.), as follows: "To grant, to admit, to suffer, to yield, to grant license to, to permit, to tolerate." In volume 2 of the Cyclopædia of Law & Procedure, p. 134, we find the term "allow" further defined, "to fix, to give." In Webster's International Dictionary it is defined, "to admit, to concede, to permit, to consent to." Mr. Anderson, in his Law Dictionary, defines "allow," "to approve, to sanction, to permit." We have been unable to find, in any of the books, any definition of the term "allow," which does not imply knowledge or consent. We are, therefore, of the opinion that the peremptory charge to find for the plaintiff was error.

*Reversed and remanded.*