STATE of Wisconsin, Plaintiff-Respondent,

v.

Mark A. LARSON, Defendant-Appellant.†

Court of Appeals

*No. 86–0253. Submitted on briefs July 16, 1986.—Decided
September 3, 1986.*

(Also reported in 395 N.W.2d 608.)

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

For the defendant-appellant, the cause was submitted on the briefs of *John A. Grundahl* of *Grundahl Law Offices*, of West Bend.

For the plaintiff-respondent, the cause was submitted on the brief of *Barbara A. Michalski*, assistant district attorney of West Bend.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J.   Mark A. Larson appeals an order of the circuit court finding Larson to be a habitual traffic offender and revoking his driving privileges for a period of five years, pursuant to sec. 351.06, Stats. Upon appeal, Larson argues that the computation procedures of sec. 351.02(1), Stats., were retroactively applied against him as an *ex post facto* law in violation of the Wisconsin Constitution, art. I, § 12 and the United States Constitution, art. I, § 10. We conclude that the 1983 amendment to the statute did not change the computation procedures of sec. 351.02(1) and therefore the statute is not applied retroactively. Therefore, we affirm the order of the circuit court.

Chapter 333, Laws of 1979, effective August 1, 1980, provided, in part:

351.02 Definitions. In this chapter:

(1) "Habitual traffic offender" means any person, resident or nonresident, whose record, as maintained by the department shows that the person has accumulated the number of convictions for the separate and distinct offenses, regardless of the license under

which the person was operating a motor vehicle, under pars. (a) *and* (b) committed within a 5-year period as follows:

(a) Four or more convictions of the following separate and distinct offenses, including any combination thereof, arising out of separate acts:

. . . .

3. Driving or operating a motor vehicle while under the influence of an intoxicant or a controlled substance under s. 346.63.

. . . .

(b) Twelve or more convictions of moving violations, including violations under par. (a), of traffic regulations or of crimes in the operation of a motor vehicle which are required to be reported under s. 343.28 or 345.37(5). [Emphasis added.]

Subsequent to the effective date of this act Larson accumulated three major violations contemplated under sec. 351.02(1)(a), Stats.

1983 Wis. Act 535, effective May 19, 1984, amended the statute to substitute the word "or" for the word "and" in sec. 351.02(1), Stats.

Following this amendment, Larson accumulated one additional major violation under sec. 351.02(1)(a), Stats. Based upon the total of four major violations (three before the amendment and one thereafter), the Washington county district attorney petitioned the circuit court to determine that Larson was a habitual traffic offender and to revoke his license. Larson defended on the grounds that the original statute required proof of not only the four major violations contemplated under subsec. (1)(a) but also the twelve or more convictions contemplated under subsec. (1)(b). Larson also

argued that use of the three major violations prior to the amendment of the statute constituted an *ex post facto* application of the amended statute and was therefore unconstitutional. Larson raises the same issues on appeal.[1]

Larson concedes that his *ex post facto* argument fails if the 1984 amendment was only a clarification of the statute's original language. If so, the statute as applied to Larson does not constitute new punishment for acts not punishable when committed. In ruling against Larson, the trial court adopted the reasoning of *State v. Rach*, No. 84-1030 slip opinion (Wis. Ct. App. Dec. 19, 1984), an unpublished opinion of the court of appeals. Properly, the trial court did not follow *Rach* as binding precedent. The state's brief, without citing *Rach*, recites much of the *Rach* decision verbatim. After considering Larson's arguments, we again conclude that the original statute, although written in the conjunctive, may be properly construed in the disjunctive.[2]

Statutory construction involves a question of law. *In re I.V.*, 109 Wis.2d 407, 409, 326 N.W.2d 127, 128 (Ct. App. 1982). On review, an appellate court need not defer to the trial court's conclusions. *Id.* "The aim of all statutory construction is to discern the intent of the legislature . . . ." *Green Bay Packaging, Inc. v. DILHR*, 72 Wis.2d 26, 35, 240 N.W.2d 422, 428 (1976). It is a fundamental rule of statutory interpretation that the "intent of the legislature is a controlling factor." *Milwaukee*

---

[1] For purposes of this decision, we assume, without deciding, that the constitutional protection against *ex post facto* laws applies to a ch. 351, Stats., habitual traffic offender proceeding.

[2] Therefore, much of this decision is largely a repeat of our statements in *Rach*.

*County v. DILHR*, 80 Wis.2d 445, 451, 259 N.W.2d 118, 121 (1977) (quoting *Safe Way Motor Coach Co. v. City of Two Rivers*, 256 Wis. 35, 40, 39 N.W.2d 847, 851 (1949)).

█ Any statutory analysis must begin with the language of the statute itself. *State ex rel. Melentowich v. Klink*, 108 Wis.2d 374, 379, 321 N.W.2d 272, 274 (1982). The initial inquiry of the court in construing a statute is whether the statutory language is clear or ambiguous. *In re I.V.*, 109 Wis.2d at 409, 326 N.W.2d at 128-29. A statute is ambiguous if reasonably well-informed persons could differ as to its meaning. *Kollasch v. Adamany*, 104 Wis.2d 552, 561, 313 N.W.2d 47, 51-52 (1981). Once the statute is determined to be ambiguous, it is the court's task to "achieve a reasonable construction which will effectuate the statute's purpose." *Melentowich*, 108 Wis.2d at 380, 321 N.W.2d at 275. In this regard, extrinsic materials, particularly the statute's legislative intent, can be valuable interpretive aids. *Milwaukee County v. DILHR*, 80 Wis.2d at 452, 259 N.W.2d at 121.

Larson argues that the earlier statute is clear in requiring that both paragraphs (a) *and* (b) of the statute be satisfied. Thus, he argues that statutory construction is needless and unnecessary. *Cf. Milwaukee Metropolitan Sewerage Dist. v. D.N.R.*, 126 Wis.2d 63, 71, 375 N.W.2d 648, 651-52 (1985).

Section 351.02(1), Stats., states that the offenses contained in subsec. (1)(a) and (b) are to be considered "separate and distinct." Subsection (1)(a) requires convictions for what the legislature has termed "serious" offenses. Legislative Reference Bureau Analysis, AB 760 (1979). "[T]o come within the provisions [of sec. 351.02(1), Stats.], a person must have been convicted of

four or more *serious* offenses . . . ." (Emphasis added.) *Id.* Subsection (1)(b) has a minimum requirement of twelve convictions, whereas subsec. (1)(a) requires only four. Because the nature of the offenses and the number of convictions required in each paragraph differ, a reasonable construction of the statute could require the fulfillment of either subsec. (1)(a) or (b). Thus, we conclude the statute is ambiguous.

The legislature's intent regarding the enactment of ch. 351, Stats., is found in sec. 351.01:

> Declaration of intent. The legislature intends by enacting this chapter:
> (1) To provide maximum safety for all users of the highways of this state.
> (2) To deny the privilege of operating motor vehicles to persons who by their conduct and record have demonstrated their indifference for the safety and welfare of others and their disrespect for the laws, courts and administrative agencies of this state.
> (3) To discourage repetition of traffic violations by individuals against the peace and dignity of this state and its political subdivisions and to impose increased and added deprivation of the privilege to operate motor vehicles upon habitual traffic offenders who have been convicted repeatedly of traffic law violations.

Under sec. 351.02(1)(a), Stats., the legislature individually lists the traffic offenses it considers serious. Because of their serious nature, only four convictions are required to satisfy the paragraph. It is reasonable to conclude, therefore, that persons who meet the requirements of subsec. (1)(a) are considered by the legislature to "have demonstrated their indifference for the safety and welfare of others." Section 351.01(2). In order to

effectuate the purposes of providing the "maximum safety for all users of the highways" and discouraging "repetition of traffic violations by individuals," persons with four serious offense convictions within a five-year period should be denied their operator's privilege. Section 351.01(1) and (3). It does not square with the legislature's declared intent that a person meeting the requirements of sec. 351.02(1)(a) must accumulate eight additional moving violations before running the risk of losing his operator's privilege. We conclude such an interpretation to be unreasonable.

In light of the legislature's declared intent, we conclude that the more reasonable interpretation of sec. 351.02(1), Stats. (1981-82), is that a person may be found to be a habitual traffic offender when he meets the requirements of either subsec. (1)(a) or (b).

Further support for this interpretation can be found in the legislative history of ch. 351, Stats., which indicates that "to come within the provisions [of sec. 351.02(1), Stats.], a person must have been convicted of four or more serious offenses, *or* twelve or more moving violations (including serious offenses) within a 5-year period." (Emphasis added.) Legislative Reference Bureau Analysis, AB 760 (1979). An analysis of a bill by the Legislative Reference Bureau is indicative of legislative intent. *See McLeod v. State*, 85 Wis.2d 787, 792, 271 N.W.2d 157, 160 (Ct. App. 1978). A fiscal estimate accompanying Assembly Bill 760 stated that "almost no one will have four serious offenses *or* twelve moving violations in one year." (Emphasis added.) Fiscal Note, AB 760 (1979). Thus, the legislative history of the statute clearly supports the conclusion that a person meeting the requirements of either paragraph may be declared a habitual traffic offender.

In light of the above analysis, we do not amend the statute nor supply an omission or correct a mistake made by the legislature. *Cf. Pfingsten v. Pfingsten,* 164 Wis. 308, 317, 159 N.W. 921, 924 (1916). Rather, we simply give effect to the true intent of the legislature by adopting a reasonable interpretation of its language.[3]

We therefore conclude that present sec. 351.02(1), Stats., is not an *ex post facto* law but rather a clarification of the previous statute. Therefore, its retroactive application against Larson in this case was constitutional.

*By the Court.*—Order affirmed.

---

[3] While certain decisions suggest that we are freer to interchange "and" and "or" than other statutory language, *see State ex rel. Rich v. Steiner,* 160 Wis. 175, 177–78, 151 N.W. 256, 257 (1915); *Menomonee River Boom Co. v. Augustus Spies Lumber & Cedar Co.,* 147 Wis. 559, 569–70, 132 N.W. 1118, 1122 (1912); *State ex rel. Wisconsin Dry Milk Co. v. Circuit Court,* 176 Wis. 198, 204, 186 N.W. 732, 734 (1922); *City of Hartford v. Godfrey,* 92 Wis.2d 815, 820, 286 N.W.2d 10, 13 (Ct. App. 1979), we need not engage in this distinction because we conclude the interpretation urged by Larson is unreasonable.